UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

HORACE W. CRUMP #236528,

    Plaintiff,                                Hon. Paul L. Maloney

v.                                                        Case No. 1:23-cv-1353

LORI BLUE, et al.,

    Defendants.
_____/

**REPORT AND RECOMMENDATION**

This matter is before me on MDOC Defendants Blue, Mikel, and Shaw's Motion for Summary Judgment raising lack of exhaustion. (ECF No. 29.) The motion is fully briefed and ready for decision. Pursuant to 28 U.S.C. § 636(b)(1)(B), I recommend that the Court **GRANT** Defendants' motion for summary judgment and **dismiss** Plaintiff's claims against Defendants Blue, Mikel, and Shaw **without prejudice** for lack of exhaustion.

**I.   Background**

Plaintiff, a prisoner currently incarcerated with the Michigan Department of Corrections (MDOC) at the Gus Harison Correctional Facility, filed a complaint pursuant to 42 U.S.C. § 1983 on December 26, 2023, against MDOC Defendants Lori Blue, R.N., Health Unit Manager (HUM) Nathan Mikel, and Resident Unit Manager (RUM) Timothy Shaw, and MDOC contractor Suzane Groff, N.P., based on events that occurred at Lakeland Correctional Facility (LCF) in July and August 2023. (ECF No. 1.) Plaintiff claims that Defendants were deliberately indifferent to his serious medical need in violation of his rights under the Eighth Amendment. (ECF No. 1 at PageID.11.)

1

The Court previously summarized Plaintiff's allegations as to the MDOC Defendants as follows:

> Plaintiff's complaint concerns the practice of using prisoner aides to fill the void created by a nursing shortage at the Lakeland Correctional Facility (LCF). Plaintiff states that this is contrary to MDOC policy and that such aides and non-medical nursing staff are performing direct patient care by responding to Plaintiff's MS (Multiple Sclerosis) exacerbations, seizures, falls, and other medical issues. Plaintiff contends that prisoner aides have interpreted his medical and physical restrictions in a manner that can result in an injury to Plaintiff and that on July 6, 2023, another prisoner informed the unit officer that Plaintiff was in distress. The unit officer requested emergency medical attention from Defendant Blue, who refused to render any assistance because a prisoner aide had informed her that Plaintiff was suffering from an "episode i.e., drug overdose." (ECF No. 1, PageID.6.) Because Defendant Blue failed to respond to Plaintiff's medical emergency, he was forced to endure a seizure/exacerbation without medical assistance, which placed him at risk of death or serious injury and led to his condition worsening. (*Id.*)
>
> Plaintiff also alleges that Defendants Mikel and Shaw knowingly employ prisoner aides without any medical or palliative experience despite knowing of Plaintiff's serious medical condition. (*Id.*) Plaintiff states that MDOC policy prohibits prisoner aides from performing direct patient care or determining access to care. (*Id.* at PageID.7.) Plaintiff states that on July 26, 2023, one of the aides opined that Plaintiff's condition did not require assistance during an exacerbation or after a seizure and refused a unit officer's order to assist Plaintiff. (*Id.*) On July 28, 2023, an aide deprived Plaintiff of the use of the unit wheelchair. (*Id.* at PageID.8.) On August 15, 2023, an aide attempted to dangerously alter Plaintiff's walker. (*Id.*)
>
> Plaintiff asserts that he has long-standing restrictions preventing him from working, stating that he is to have an attendant/assistance, is visually impaired, and that he is a fall risk, which are now all being ignored because aides have gone to Defendants Mikel and Shaw and opined that Plaintiff does not need assistance. Based solely on the opinions of prisoner aides, Defendants Mikel and Shaw determined that Plaintiff would not get assistance without consulting Plaintiff's medical providers. (*Id.* at PageID.8-9.)

(ECF No. 5 at PageID.4–5.)

## II.  Motion Standard

Summary judgment is appropriate if there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Material facts are facts that are defined by substantive law and are necessary to apply the law. *Anderson v. Liberty*

2

*Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if a reasonable jury could return judgment for the non-moving party. *Id.*

The court must draw all inferences in a light most favorable to the non-moving party but may grant summary judgment when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Agristor Fin. Corp. v. Van Sickle*, 967 F.2d 233, 236 (6th Cir. 1992) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

While a moving party without the burden of proof need only show that the opponent cannot sustain his burden at trial, a moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002). Where the moving party has the burden, "his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). The Sixth Circuit has emphasized that the party with the burden of proof "must show that the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561 (quoting *Cockrel v. Shelby Cnty. Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001)). Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

### III. Discussion

Pursuant to 42 U.S.C. § 1997e(a), a prisoner must exhaust all available administrative remedies before filing a lawsuit with respect to prison conditions under 42 U.S.C. § 1983. *See Porter v. Nussle*, 534 U.S. 516, 524 (2002). Prisoners are no longer required to demonstrate

3

exhaustion in their complaints. *See Jones v. Bock*, 549 U.S. 199, 216 (2007). Instead, failure to exhaust administrative remedies is "an affirmative defense under the PLRA," which the defendant bears the burden of establishing. *Id*. With respect to what constitutes proper exhaustion, the Supreme Court has stated that "the PLRA exhaustion requirement requires proper exhaustion," defined as "compliance with an agency's deadlines and other critical procedural rules." *Woodford v. Ngo*, 548 U.S. 81, 90-93 (2006). In *Bock*, the Court reiterated:

> Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to "properly exhaust." The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion.

*Bock*, 549 U.S. at 218.

MDOC Policy Directive 03.02.130 sets forth the applicable grievance procedure for prisoners in MDOC custody. Prior to submitting a grievance, a prisoner is required to "attempt to resolve the issue with the staff member involved within two business days after becoming aware of a grievable issue, unless prevented by circumstances beyond his/her control or if the issue is believed to fall within the jurisdiction of Internal Affairs." Mich. Dep't of Corr. Policy Directive 03.02.130 ¶ Q (effective 03/18/2019). If this attempt is unsuccessful (or is inapplicable), the prisoner may submit a Step I grievance. *Id.* The Step I grievance must be submitted within five business days after attempting to resolve the matter with staff. *Id.* The issues asserted in a grievance "should be stated briefly but concisely," and the "[d]ates, times, places, and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ S.

If the prisoner is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II within ten business days of the response, or if no response was received, within ten business days after the response was due. *Id.* at ¶ DD. If the prisoner is dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal the matter to

Step III. *Id.* at ¶ HH. The Step III grievance must be submitted within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.*

In support of their motion, Defendants submit a Step III Grievance Report for Plaintiff dated January 6, 2025, which shows the grievances arising out of LCF that Plaintiff filed in or after July 2023 and exhausted through Step III. (ECF No. 30-3.) The Step III Report shows that Plaintiff filed three grievances:

- LCF-23-07-0596-28i (0596 Grievance). In this grievance, Plaintiff alleged that a prisoner had informed an officer that Plaintiff needed emergency medical assistance. Plaintiff wrote that the nurse, Defendant Blue, said that her decision not to respond or allow Plaintiff access to healthcare was due to a prisoner aide's report to her that Plaintiff's need for care was an "episode," *i.e.*, an overdose. Plaintiff alleged that Blue's deliberate indifference to his emergency medical needs could have resulted in his death. (*Id.* at PageID.239.) The Step I grievance was rejected because Plaintiff failed to attempt to resolve the issue with healthcare prior to filing the grievance. Plaintiff appealed the rejection to Steps II and III, but the rejection was upheld at each step. (*Id.* at PageID.237–38.)
- LCF-23-08-0640-28b (0640 Grievance). In this grievance, Plaintiff alleged that on July 26, 2023, while in his presence, a prisoner aide discussed his disabilities with another prisoner aide and gave his medical opinion about what assistance Plaintiff required during an exacerbation or following a seizure, which caused the aide to discontinue assisting Plaintiff. Plaintiff alleged that he asked healthcare who gave the prisoner authority to discuss his medical issues and was told that the aide should be assisting Plaintiff in accordance with MDOC policy. Plaintiff asked that the matter be investigated and that the prisoner aide be disciplined. The 0640 Grievance was rejected as vague at Step I. (*Id.* at PageID.236.) Plaintiff appealed the rejection to Steps II and III, but the rejection was upheld at each step. (*Id.* at PageID.234–35.)
- LCF-23-08-0657-LCF-12f (0657 Grievance).[1] In the 0657 Grievance, Plaintiff alleged that on July 31, 2023, while in healthcare, he inquired about his ACMO-approved Baclofen, and Defendant Groff admitted she had not ordered it. Plaintiff alleged that Defendant Groff still had not ordered the Baclofen by that evening. The 0657 Grievance was denied at Step I, as were Plaintiff's appeals to Steps II and III. (*Id.* at PageID.229–33.)

---

[1] There is no issue that the 0657 Grievance did not exhaust a claim against the MDOC Defendants, as the subject of that grievance was limited to Defendant NP Groff's alleged failure to order Plaintiff's Baclofen.

5

### A.     0640 Grievance

Defendants contend that the 0640 Grievance did not exhaust any claims against them for two reasons. First, they argue that the grievance failed to identify any MDOC employee or contractor. Instead, they note, Plaintiff grieved the conduct of two prisoner aides that resulted in him not receiving assistance. (ECF No. 30 at PageID.206.) Defendants further contend that this grievance failed to exhaust any claims because it was rejected as vague pursuant to MDOC policy, and the rejection was upheld at all three steps of the grievance process. (*Id.*) Plaintiff responds that he did name Defendants Shaw and Mikel in his Step I grievance by stating that he tried to resolve the issue by speaking to them. (ECF No. 32 at PageID.248–49.) He asserts that he tried to resolve the issue with these managers because prisoners cannot be grieved. (*Id.*) He further contends that his grievance was not vague and should have alerted the grievance respondent to his issue concerning staff because he alleged that the managers "gave aides 'medical authority[.]'" (*Id.*) He argues that he gave prison officials fair notice of his claim that staff "fail[ed] to supervise the aides." (*Id.* at PageID.249–50.)

While Plaintiff indicated in the Step I grievance that he attempted to resolve the grievance by speaking with Defendants Shaw and Mikel, he failed to name them at all in the portion of the grievance requiring the grievant to "[s]tate [the] problem clearly." (ECF No. 30-3 at PageID.236.) And, even if the reference to "H/C" may be considered a reference to HUM Mikel, it cannot reasonably be interpreted as referring to RUM Shaw, who has nothing to do with healthcare. Therefore, at a minimum, Plaintiff failed to put prison officials on notice that his grievance concerned RUM Shaw's conduct. *See Reed-Bey v. Pramstaller*, 603 F.3d 322, 324 (6th Cir. 2010) ("Under the [MDOC's] procedural rules, inmates must include the . . . 'names of all those involved in the issue being grieved' in their initial grievance.").

6

In addition, the grievance was rejected as "[v]ague on alleged violation by staff." (*Id.* (underline in original).) As long as the prison "clearly rejects a grievance for a reason explicitly set forth in the applicable grievance procedure, a subsequent § 1983 claim based on the grievance will be subject to dismissal for failure to properly exhaust." *Burnett v. Howard*, No. 2:09-CV-37, 2010 WL 1286256, at *1 (W.D. Mich. Mar. 30, 2010) (internal quotation marks and citation omitted). Still, a court is not obligated to simply accept at face value the MDOC's assertion that a particular grievance is improperly vague. *See, e.g.*, *Williams v. Winn*, No. 18-11060, 2019 WL 2252012 at *6 (E.D. Mich., Feb. 27, 2019), *report and recommendation adopted*, 2019 WL 1417166 (E.D. Mich. Mar. 29, 2019) ("The rejection of the grievances is not, however, the end of the analysis. It is appropriate for the Court to review the prison official's administration of the state grievance procedure"). But a grievance that fails to give prison officials notice of the nature of a claim or against whom it is directed is properly rejected as vague under MDOC Policy. *See Vandiver v. Correctional Med. Servs., Inc.*, 326 F. App'x 885, 890 (6th Cir. 2009). Plaintiff's grievance did not identify the nature of his claim or the staff against whom it was directed. As noted, the focus of the grievance was prisoner aide Hubbard's misconduct. Plaintiff claimed that Hubbard improperly discussed Plaintiff's disabilities with another aide, which led to the aide not assisting Plaintiff. While Plaintiff indicated that he contacted healthcare about the aide's authority and was told that the aide should be assisting him in accordance with policy, Plaintiff's concluding request that the "matter be investigated" and that Hubbard be disciplined suggested that Plaintiff wanted prisoner Hubbard's conduct investigated. Nothing in the grievance indicated that Plaintiff was complaining about MDOC staff's violation of policy. Therefore, the 0640 Grievance was properly rejected as vague and did not exhaust Plaintiff's claims against Defendants Shaw and Mikel.

### B. 0569 Grievance

Although Defendants concede that the 0569 Grievance named Defendant Blue, they argue that it did not exhaust any claims against her as it was rejected for Plaintiff's failure to attempt to resolve the issue prior to filing the grievance. This is a proper ground for rejecting a grievance and, if valid, renders the grievance unexhausted. *See Doss v. Corizon Med. Corp.*, No. 21-1423, 2022 WL 1422805, at *2 (6th Cir. Mar. 15, 2022). Defendants argue that Plaintiff failed to attempt to resolve the issue of Defendant Blue's failure to render the medical care he requested because he indicated in his grievance that his request for medical care itself—made to the corrections officer—was his attempt to resolve his grievance. Defendants contend that Plaintiff's request for medical care could not have resolved the issue he sought to grieve because his request for medical care occurred prior to the existence of the issue itself—Nurse Blue's denial of his request. (ECF No. 30 at PageID.208–09.)

It is correct that a request for medical care made through a corrections officer does not constitute an attempt to resolve the issue with the staff member involved, which is what the policy requires. *See Harrison v. VanderMolin*, No. 1:23-cv-764, 2024 WL 4604053, at *2 (W.D. Mich. Oct. 29, 2024). As Plaintiff notes, however, the respondent rejected the grievance because Plaintiff made "[n]o attempt to resolve [the] alleged issue with healthcare by kite prior [to] filing." (ECF No. 30-3 at PageID.239.)

Plaintiff relies on *Gardiner v. Corizon Health, Inc.*, No. 2:21-cv-167, 2022 WL 19003255 (W.D. Mich. Dec. 28, 2022), *report and recommendation adopted in part and rejected in part*, (W.D. Mich. Feb. 7, 2023), as support that the rejection was improper. In *Gardner*, the grievance coordinator rejected the plaintiff's grievance for failure resolve the issue prior to filing the grievance, and in an affidavit submitted in support of the defendants' motion for summary judgment, stated that he rejected the grievance because "prisoners are required to submit healthcare

8

kites to resolve healthcare issues before filing a grievance." *Id.* at *5. The court noted that the grievance coordinator had not indicated in his grievance response that the plaintiff was required to kite healthcare to request treatment before he filed a grievance. It further observed that the grievance policy does not indicate that a grievance regarding healthcare can be rejected if the prisoner fails first to send a kite. *Id.* Plaintiff thus contends that the rejection at issue was improper because he was not required to kite healthcare to attempt to resolve the issue.

Defendants do not address *Gardner* in their reply. Nonetheless, the facts therein are distinguishable from those at issue in this case. In his Step I grievance in *Gardner*, the plaintiff said that he tried to resolve the issue by informing the nurses and the physician assistant that he needed an x-ray, an MRI, and possible surgery. *See Gardner*, 2:21-cv-167, ECF No. 31-3 at PageID.145 (Step I grievance). In contrast, Plaintiff did not say in his Step I grievance that he discussed the issue with Defendant Blue or that he told her anything. Rather, his request for healthcare was made through the corrections officer. The grievance policy requires the prisoner to "attempt to resolve the issue *with the staff member involved*," Mich. Dep't of Corr. Policy Directive 03.02.130 ¶ Q (italics added), before filing the grievance. Plaintiff is correct that the policy does not require him to submit a kite to healthcare; so long as a prisoner tries to resolve the issue with the staff involved, either orally or in writing, he has complied with the policy's requirements. But here, Plaintiff did neither. Therefore, I recommend that the Court conclude that the 0569 Grievance was properly rejected and thus failed to exhaust Plaintiff's claim against Defendant Blue.

    C.    **Other Grievances and Thwarted Efforts**

In his response, Plaintiff asserts that he submitted four other grievances that were relevant to his instant claims (apparently against Defendants Shaw and Mikel) and that the grievance

process was unavailable to him for several reasons, including that he was not provided visual assistance mandated by his medical detail. These arguments lack merit.

Plaintiff identifies four additional grievances he claims are relevant to his claims, LCF-23-11-0894-28b/e (0894 Grievance), LCF-23-11-0904-28b (0904 Grievance), LCF 24-2-0157-28i (0157 Grievance), and LCF-25-1-066-28c (066 Grievance). (ECF No. 32 at PageID.247.) Plaintiff asserts that he was denied appeal forms, or did not receive appeal responses, for these grievances. (*Id.*)

These allegations, however, are entirely conclusory. Plaintiff fails to set forth facts demonstrating how his efforts to exhaust each one of these grievances were hindered or impeded. As courts recognize, vague and unspecific statements by a prisoner that he attempted to exhaust his administrative remedies are insufficient to create a genuine dispute of fact on the question of exhaustion. *See*, *e.g.*, *Belser v. James*, No. 16-2578, 2017 WL 5479595 at *2 (6th Cir. June 6, 2017) (stating that "Belser's generalized statements are insufficient to create a genuine dispute of material fact as to whether the administrative process was available to him at MBP"); *Smith v. Brock*, No. 1:22-cv-149, 2023 WL 3871923 at *5 (W.D. Mich. Mar. 16, 2023), *report and recommendation adopted*, 2023 WL 3611730 (W.D. Mich. May 24, 2023) (prisoner's vague allegation that prison officials "destroyed" his grievances is insufficient to create a factual dispute where the prisoner "does not state when he wrote the grievances, nor does he provide any information as to what they concerned").

Moreover, Plaintiff's own evidence refutes his allegation that he never received a Step II form for the 0904 Grievance. For example, in response to Plaintiff's September 22, 2024 letter to the Director's Office concerning LCF's refusal to send him appeal responses and appeal forms for the additional grievances, the respondent noted that the Step II response for the 0894 Grievance

10

was completed and returned to Plaintiff on November 27, 2023; that Plaintiff was sent an appeal form for the 0904 Grievance on November 21, 2023; and that requests for appeal forms for the 0147 and 0157 Grievances were never received but appeal forms were being sent to him. (ECF No. 34-1.) In spite of Plaintiff's assertion that he never received an appeal form for the 0904 Grievance (ECF No. 32 at PageID.247; ECF No. 34), he attached to his complaint a goldenrod copy of an appeal form for what appears to be the 0904 Grievance dated November 24, 2023 (ECF No. 1-2 at PageID.53–54)—which aligns with the response to his September 22, 2024 letter stating that an appeal form had been sent to him on November 21, 2023. To the extent Plaintiff did not receive appeal responses, the grievance policy addresses the issue, requiring him to appeal to the next step if he failed to receive a response within ten days after the date the response was due, including any extensions. Mich. Dep't of Corr. Policy Directive 03.02.130 ¶¶ DD, HH. Plaintiff's failure to proceed to the next step if he did not receive a timely response does not excuse him from completing the grievance process.

Finally, Plaintiff's claim that the lack of visual assistance or any other cause prevented him from pursuing his administrative remedies is undermined by his own success in pursuing the 0596, 0640, and 0657 Grievances through Step III. (*See also* ECF No. 33-3 at PageID.276.)

I further note that the additional grievances Plaintiff cites could not have exhausted any of his claims in this case. First, Plaintiff fails to show that any of these grievances actually concerned the issues Plaintiff raises in this action. More importantly, these grievances could not have exhausted Plaintiff's claims because Plaintiff could not have completed the exhaustion process through Step III prior to filing his complaint on December 21, 2023 (date of mailing). The 0157 and 066 Grievances were filed in February 2024 and January 2025, respectively, after Plaintiff filed his complaint. Although Plaintiff filed the 0894 and 0904 Grievances in November 2023,

11

assuming that they exhausted any claim he asserts in this action, he could not have completed the three-step process before the date he filed his complaint. *See* Mich. Dep't of Corr. Policy Directive 03.02.130 ¶ II ("Generally, Step III responses will be responded to within 60 business days.") *See Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir. 1999) (stating that "we must dismiss plaintiff's complaint because he filed his federal complaint before allowing the administrative process to be completed").

Accordingly, Defendants have met their summary judgment burden of demonstrating that Plaintiff failed to exhaust his administrative remedies on his clams against them.

### IV.  Conclusion

For the foregoing reasons, I recommend that the Court **grant** Defendants Blue, Shaw, and Mikel's motion for summary judgment (ECF No. 29) and dismiss Plaintiff's claims against them **without prejudice**.

Dated: September 22, 2025               /s/ Sally J. Berens
                                        SALLY J. BERENS
                                        U.S. Magistrate Judge

### NOTICE

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within 14 days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).